UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-61169-Ruiz/McCabe

ALYSHA PRINCESS CESAIRE, on her own behalf
and on behalf of her child, E.B., a minor,

    Plaintiff,

v.

SHERIFF GREGORY TONY, in his official capacity
as Sheriff of Broward County, et al.,

    Defendants.
_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss ("Motion") (DE 143), which was referred to the undersigned by United States District Judge Rodolfo A. Ruiz, II (DE 145). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART.**

**I.    BACKGROUND**

This is a disability discrimination case. The Court accepts the following facts as true, taken from the Third Amended Complaint ("TAC") (DE 134). Plaintiff is a disabled person who gave birth to a son in 2018 (DE 134 ¶ 20). Following the birth, someone (the TAC does not identify who) made a call to the Florida Abuse Hotline, operated by the Florida Department of Children and Families ("DCF"), expressing concern that Plaintiff would not be able to care for her newborn baby due to her disability (DE 134 ¶ 27). The matter was assigned to Defendant, the Broward County Sheriff's Office ("BSO"), for investigation (DE 134 ¶ 27).[1]

---

[1] DCF normally investigates calls made to the Florida Abuse Hotline. Pursuant to Fla. Stat. § 39.3065, however, DCF transferred responsibility for child protective investigations in Broward County to BSO prior to the events in this case. As explained in section III.A, the Florida Legislature has since repealed Fla. Stat. § 39.3065.

On February 6, 2018, a BSO investigator completed a Child Present Danger Assessment, concluding, among other things, that Plaintiff's newborn son was in danger because Plaintiff's disability prevented her from meeting the basic needs of the child (DE 134 ¶ 39). BSO then caused a "Shelter Petition" to be filed under Florida law, alleging that Plaintiff's impairment hindered her ability to meet the child's basic needs (DE 134 ¶¶ 40-43). On February 7, 2018, a state court judge denied the Shelter Petition, finding that it lacked probable cause and that "immediate services can be put in place to alleviate the risk to the health, safety, and welfare of the child" (DE 134 ¶ 48) (cleaned up).

Despite the state court's ruling, a BSO investigator thereafter signed a Verified Petition for Dependency, making many of the same allegations as the Shelter Petition (DE 134 ¶ 50). On March 7, 2018, and again on March 14, 2018, the Assistant Attorney General assigned to prosecute the case in Dependency Court advised BSO that she recommended the case be dismissed due to lack of legal sufficiency (DE 134 ¶¶ 60-61, 68). BSO did not agree with the recommendation (DE 134 ¶ 62). Instead, BSO continued to pursue the case until May 18, 2018, when it was finally voluntarily dismissed on the day trial was scheduled to commence (DE 134 ¶ 74).

Plaintiff alleges that BSO's conduct violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (DE 134 ¶¶ 77-86). Specifically, Plaintiff alleges that BSO acted in bad faith and discriminated against her on the basis of her disability by, inter alia, making an improper and discriminatory assessment of her ability to care for her newborn baby, instituting the Shelter Petition based solely on discriminatory ideas as to the abilities of disabled parents to care for their children, and thereafter filing and pursuing the Verified Petition for Dependency despite being on notice that it lacked legal sufficiency (DE 134 ¶ 82).

Plaintiff seeks actual damages including the litigation costs incurred in defending the dependency proceedings (DE 134 ¶ 83, Wherefore Clause). She also seeks a declaration that BSO

violated the ADA, as well as an injunction that would, among other things, require BSO employees to undergo training regarding how to develop and implement reasonable accommodations for parents with disabilities (DE 134 ¶ 86, Wherefore Clause).

## II.   LEGAL STANDARD

By way of this motion, BSO seeks dismissal of the TAC pursuant to Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   DISCUSSION

BSO urges dismissal on multiple grounds, each of which the Court will address in turn.

### A.   Claim for Injunctive Relief

BSO first argues Plaintiff's claim for injunctive relief should be dismissed as moot due to the passage of Chapter 2023-77, Laws of Florida, approved by the Governor on May 11, 2023 (DE 143 at 3-9). Prior to the enactment of this new law, Fla. Stat. § 39.3065 made the sheriffs of certain Florida counties, including Broward County, responsible for child protective investigations in their respective counties. With the passage of the new law, however, the Florida Legislature repealed Fla. Stat. § 39.3065 in its entirety and ordered BSO to transfer responsibility for child protective

3

investigations to DCF no later than December 23, 2023.  *See* Ch. 2023-77, § 16, Laws of Florida (2023).

In a recent court filing, BSO confirmed that "DCF notified BSO that the transition shall be completed during the first week of July 2023 and that beginning July 7, 2023, DCF shall be solely responsible for conducting all child protective investigations in Broward County, including all investigations open or pending or ongoing as of that date, and BSO shall cease all [child protective investigation] functions" (DE 130 ¶ 3).  Given that BSO no longer has responsibility for such investigations, BSO argues that Plaintiff's request for injunctive relief – which seeks to impose training requirements on BSO employees performing such investigations – has now become moot.  Plaintiff conceded this point during oral argument on the Motion.

The Court agrees that all claims for injunctive relief have become moot and should be dismissed.  A plaintiff seeking injunctive relief "must show a sufficient likelihood that [he or she] will be affected by the allegedly unlawful conduct in the future."  *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001).  Here, no such likelihood exists because BSO no longer conducts child protective investigations.  As such, the request for injunctive relief should be dismissed.  *See Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993) ("A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.").

B.   **Claim for Damages**

BSO next argues that Plaintiff's claim for damages should be dismissed because Plaintiff has no viable damages claim under Title II of the ADA (DE 143 at 9-11).  Specifically, BSO argues that Plaintiff seeks to recover solely for mental and emotional distress, which the Supreme Court deemed non-recoverable under a similar statute, § 504 of the Rehabilitation Act, in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022).  As set forth below,

4

the Court agrees that *Cummings* governs the scope of damages recoverable in this case, but disagrees that Plaintiff has exceeded that scope.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As to remedies, Title II incorporates the same remedies as the Rehabilitation Act, *see* 42 U.S.C. § 12133, which in turn, incorporates the same remedies as Title VI of the Civil Rights Act of 1964, *see* 29 U.S.C. § 794a(a)(2). In *Barnes v. Gorman*, 536 U.S. 181, 185 (2002), the Supreme Court observed that all three statutes have "coextensive" remedies. Accordingly, "if a certain category of damages is not available under [the Rehabilitation Act or Title VI], it is not available under Title II either." *Montgomery v. District of Columbia*, No. 18-1928 (JDB), 2022 WL 1618741, at *24 (D.D.C. May 23, 2022).

The Rehabilitation Act and Title VI are both "silent as to available remedies." *Cummings*, 142 S. Ct. at 1571. Accordingly, the Supreme Court has, in a series of cases, defined the types of damages that can be recovered under these statutes. *Id.* In doing so, the Supreme Court has referred to these laws as "Spending Clause" statutes, so named because Congress derived its power to enact these laws from the Spending Clause of the Constitution. *Id.* With each such law, Congress has used its spending power to authorize the spending of federal funds but has conditioned the receipt of those funds on the receiving entity's implicit agreement not to discriminate based on certain protected characteristics. *Id.* at 1569 (citing the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and the Affordable Care Act as examples of "Spending Clause statutes").

In fashioning damages available under Spending Clause statutes, the Supreme Court has drawn an analogy to traditional contract law. *Id.* at 1570-71. The Court has reasoned that

5

"legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the recipients agree to comply with federally imposed conditions." *Id.* at 1568 (cleaned up).  Accordingly, when a recipient accepts federal funds pursuant to a Spending Clause statute, the recipient may be considered "on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies *traditionally available in suits for breach of contract*." *Id.* at 1571 (quoting *Barnes*, 536 U.S. at 185) (emphasis added).

Following this analogy, the Supreme Court has consistently defined the limits of damages recoverable under Spending Clause statutes based on the damages recoverable under traditional contract law.  Thus, in *Barnes,* the Court concluded that the Rehabilitation Act does not allow recovery of punitive damages because such damages "are generally not available for breach of contract."  536 U.S. at 187-88 (citing Restatement (Second) of Contracts § 355 (Am. Law Inst. 1981)).  Likewise, in *Cummings*, the Court concluded that the Rehabilitation Act does not allow recovery of emotional distress damages because "[i]t is hornbook law that 'emotional distress is generally not compensable in contract.'"  142 S. Ct. at 1571 (citing 11 W. Jaeger, Williston on Contracts § 1341, p. 214 (3d ed. 1968)).  In each case, the Supreme Court used traditional contract law as the guidepost for determining damages under Spending Clause statutes.

The Court agrees with BSO's contention that the holding in *Cummings* necessarily extends to this case.  Given that Title II incorporates the same remedies as the Rehabilitation Act, the Court agrees Plaintiff cannot state a viable claim for emotional distress damages.  The Court disagrees, however, that Plaintiff seeks to recover solely for emotional distress damages.  Instead, the Court finds Plaintiff alleges facts sufficient to state viable claims for two additional types of damages: (1) wrongful act damages, and (2) nominal damages.  As set forth below, the Court finds that both categories would be recoverable under traditional contract law and, as such, would also be recoverable under Spending Clause statutes such as the Rehabilitation Act and Title VI of the Civil

Rights Act of 1964. And given that Title II incorporates the same remedies as these Spending Clause statutes, the Court concludes that Plaintiff states viable claims for these categories of damages. The Court will address each category in turn.

### (1)     Wrongful Act Damages

Traditional contract law has long recognized that a plaintiff can recover, as part of the contract damages, the litigation expenses incurred when a defendant's breach of contract causes the plaintiff to become embroiled in litigation against a third party, as recognized by the Restatement (First) of Contracts:

> § 334 Expense of Litigation Caused by Breach of Contract
>
> If a breach of contract is the cause of litigation between the plaintiff and third parties that the defendant had reason to foresee when the contract was made, the plaintiff's reasonable expenditures in such litigation are included in estimating his damages.

Restatement (First) of Contracts § 334 (Am. Law Inst. 1932); *see also* Corbin on Contracts, Vol. 5, § 1037, pp. 225-26 ("Among the losses suffered by a plaintiff because of the defendant's breach of contract may be the expenses of litigation … [except for] the cost of litigation with the defendant himself.").

Courts often refer to damages under this theory as the "wrongful act doctrine." *See Anago Franchising, Inc. v. Shaz, LLC*, No. 10-62273-CIV, 2013 WL 12086840, at *2 (S.D. Fla. May 9, 2013) (denying motion to dismiss damage claim, in a breach-of-contract action, for attorneys' fee damages incurred in litigation against a third party, citing to the wrongful act doctrine); *De Pantosa Saenz v. Rigau & Rigau, P.A.*, 549 So. 2d 682, 685 (Fla. 2d DCA 1989) (noting that a plaintiff can recover attorneys' fees incurred in litigation against a third party as an element of compensatory damages "if that litigation was caused by the defendant's breach of contract or wrongful act."); *Milohnich v. First Nat. Bank of Miami Springs*, 224 So. 2d 759, 762 (Fla. 3d DCA 1969) (applying the wrongful act doctrine in breach-of-contract case).

In this case, Plaintiff alleges that BSO engaged in discriminatory conduct that caused Plaintiff to become embroiled in litigation against a third party, specifically, the dependency proceeding in Florida state court against DCF (DE 134 ¶¶ 3, 5, 46, 83).  As a result of BSO's actions, Plaintiff alleges she suffered actual damages in the form of costs and expenses incurred in hiring an attorney to defend the dependency proceedings (DE 134 ¶¶ 3, 5, 46, 83).  The Court finds these damages fall within the scope of the "wrongful act doctrine."  Because such damages would be recoverable in a traditional breach-of-contract action, the Court finds they would likewise be recoverable under Spending Clause statutes such as the Rehabilitation Act and Title VI of the Civil Rights Act of 1964.  And given that Title II incorporates the same remedies as these Spending Clause statutes, the Court concludes Plaintiff states a viable claim for wrongful act damages in this case.

The Court has considered, but finds unpersuasive, BSO's argument that this holding violates the "American Rule," under which each party is responsible for its own legal fees, absent a statute or contract to the contrary.  *See Johnson v. Florida*, 348 F.3d 1334, 1350 (11th Cir. 2003) (explaining the "American Rule").  The wrongful act doctrine serves as "a very narrow exception" to the American Rule.  *City of Tallahassee v. Blankenship & Lee*, 736 So. 2d 29, 30 (Fla. 1st DCA 1999).  The doctrine does not allow recovery of attorneys' fees in the instant litigation against the instant defendant; instead, it only allows recovery, as an element of damages, of attorneys' fees and costs incurred in *past litigation* against a *third party*.  *See* Restatement (First) of Contracts § 334 cmt. a (Am. Law Inst. 1932) (noting that the doctrine "does not deal with the cost of litigation with the immediate defendant himself").

In this regard, the Court notes that the allegations of the TAC remain somewhat unclear as to the exact relationship between BSO and DCF and the role played by each agency in Florida dependency proceedings.  It may well be the case that BSO and DCF, due to the nature of Florida

8

dependency proceedings, should be treated as a single "actor" for purposes of the wrongful act doctrine. At this stage of the case, with no evidence presented, the Court cannot resolve this issue and expresses no view. Rather, construing all allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has made sufficient allegations to show that DCF qualifies as a "third party" for purposes of the wrongful act doctrine, such that Plaintiff's past litigation costs against DCF would be recoverable under that doctrine. *See Pielage*, 516 F.3d at 1284 (court must construe complaint in the light most favorable to the plaintiff on a motion to dismiss). This holding does not preclude a different result at summary judgment with the benefit of a full record.

### (2) Nominal Damages

Next, traditional contract law also recognizes that a plaintiff can recover nominal damages in a breach-of-contract action even when the plaintiff fails to prove actual damages, as recognized by the Restatement (Second) of Contracts:

§ 346 Availability of Damages

(1) The injured party has a right to damages for any breach by a party against whom the contract is enforceable unless the claim for damages has been suspended or discharged.

(2) *If the breach caused no loss or if the amount of the loss is not proved under the rules stated in this Chapter, a small sum fixed without regard to the amount of loss will be awarded as nominal damages*.

Restatement (Second) of Contracts § 346 (Am. Law Inst. 1981) (emphasis added); *see also Alhassid v. Bank of America, N.A.*, No. 14-20484, 2015 WL 11216721, at *5 (S.D. Fla. Sept. 14, 2015) ("[U]nder Florida law, a plaintiff is entitled to nominal damages upon a factual determination that a contract has been breached by the defendant."); *Destiny Const. Co. v. Martin K. Eby Const.*, 662 So. 2d 388, 390 (Fla. 5th DCA) ("In this regard, even if Destiny is not able to prove that it sustained actual damages as a result of the breach, Destiny would be entitled to recover nominal damages upon a showing of breach of contract."); *Wilson v. Univ. Cmty. Hosp., Inc.*, 101

So. 3d 857, 858-59 (Fla. 2d DCA 2012) ("[N]ominal damages may be recovered in cases where there is proof of injury but there is no evidence or insufficient evidence to show the actual amount of damages.").

Because nominal damages would be recoverable in a traditional action for breach of contract, the Court finds they would likewise be recoverable under Spending Clause statutes such as the Rehabilitation Act and Title VI of the Civil Rights Act of 1964. And given that Title II incorporates the same remedies as these Spending Clause statutes, the Court concludes that Plaintiff states a viable claim for nominal damage in this case.

The Court has considered, but finds unpersuasive, BSO's argument that this holding extends the scope of Title II damages allowed by Congress (DE 152 at 2-3). As observed in *Barnes*, Title II incorporates the same remedies as the Rehabilitation Act, which in turn incorporates the same remedies as Title VI of the Civil Rights Act of 1964, such that all three statutes have "coextensive" remedies. 536 U.S. at 185. The Supreme Court has consistently defined the scope of damages available under the latter two statutes (which are both Spending Clauses statutes) based on the scope of damages available in traditional breach-of-contract cases. As explained above, traditional breach-of-contract cases allow for recovery of both wrongful act damages and nominal damages. Accordingly, the Court views this holding as consistent with the plain language of Title II and with Supreme Court precedent on this issue. BSO has cited no cases to the contrary. For all of these reasons, the Motion should be denied as to Plaintiff's claim for wrongful act damages and nominal damages.

C.   **Claim for Declaratory Relief**

Finally, Plaintiff requests that the Court "declare that the acts of BSO violated the [ADA]" (DE 134, Wherefore Clause). To the extent this request seeks to state a claim for declaratory relief, the Court sua sponte recommends dismissal. District courts have broad discretion over requests

for declaratory relief and need not entertain requests that are duplicative or redundant to other claims for affirmative relief. *See, e.g.*, *Remedios v. Nat'l Fire & Marine Ins. Co.*, No. 1:19-21559-KMM, 2019 WL 7956170, at *4 (S.D. Fla. Aug. 29, 2019) (dismissing a declaratory judgment claim that involved the same factual dispute as breach-of-contract claim); *ARSC, Inc. v. Covington Specialty Ins. Co.*, No. 17-61605, 2017 WL 10742774, at *1 (S.D. Fla. Dec. 20, 2017) ("Emerald Center's petition for a declaratory judgment serves no useful purpose because it involves only past conduct which has already ripened into a breach-of-contract claim: there is no future uncertainty to resolve.").

In this case, Plaintiff's request for declaratory relief regarding BSO's conduct is duplicative of, and redundant to, Plaintiff's affirmative claim for damages under Title II of the ADA (DE 134 ¶¶ 77-86). Both claims require resolution of the same factual issues regarding BSO's compliance with Title II (DE 134 ¶¶ 77-86). The declaratory relief claim therefore serves no useful purpose, and the District Court should decline to entertain it. The Court recommends dismissal of this claim.

### IV. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that the Motion (DE 143) be **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Motion should be **GRANTED** as to all claims for injunctive relief, and all such claims should be dismissed.

2. The Motion should be **GRANTED** as to all claims for declaratory relief, and all such claims should be dismissed.

3. The Motion should be **DENIED** as to claims for wrongful act damages and nominal damages under Title II of the ADA.

4. Given that Plaintiff has had numerous past opportunities to state a claim, the Court further recommends that all dismissals recommended here be **WITH PREJUDICE**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Rodolfo A. Ruiz, II.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 20th day of September 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE